UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JONATHAN ESTUARDO TUM AILON,

Petitioner,

v.

JULIO HERNANDEZ et al.,

Respondents.

CASE NO. 2:26-cv-03531-LK

ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS

This matter comes before the Court on Petitioner Jonathan Estuardo Tum Ailon's amended petition for a writ of habeas corpus. Dkt. No. 15. For the reasons explained below, the Court grants the petition in part and denies it in part.[1]

## I. BACKGROUND

Petitioner is a native and citizen of Guatemala who came to the United States as a minor with his father on or about May 13, 2019. Dkt. No. 15 at 6; Dkt. No. 19 at 2. The same day, they were arrested by United States Border Patrol in Del Rio, Texas. Dkt. No. 19 at 2. Border Patrol

[1] The Court declines to hold an evidentiary hearing because the record is sufficient for adjudication of the petition. *See Owino v. Napolitano*, 575 F.3d 952, 954 (9th Cir. 2009).

released Petitioner the same day on an Order of Release on Recognizance ("OREC"). *Id.* On May 21, 2019, Border Patrol issued Petitioner a Notice to Appear ("NTA"), charging him as inadmissible pursuant to Section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"), "in that Petitioner was an alien present in the United States without being admitted or paroled." *Id.* Four and a half years later, on November 13, 2023, an immigration judge ("IJ") dismissed Petitioner's removal case before the Executive Office of Immigration Review ("EOIR"), for reasons that are not explained in the record. *Id.*

On September 2, 2026, the "Blaine Sector Targeted Enforcement Unit (TEU)," which presumably is a subsection of U.S. Immigration and Customs Enforcement ("ICE"), arrested Petitioner in Lynden, Washington. *Id.* Petitioner claims that he was pulled over while driving, that he attempted to call his attorney, that ICE officers broke the window of his car, dragged him out, and "slammed him to the ground and pushed his face to the ground," and that he was handcuffed and transported to the Ferndale Detention facility before he was transferred to the Northwest ICE Processing Center ("NWIPC") in Tacoma, Washington. Dkt. No. 15 at 6.[2] The same day, Border Patrol issued Petitioner a second NTA, again charging him as inadmissible pursuant to INA Section 212(a)(6)(A)(i), and also as inadmissible pursuant to INA Section 212(a)(7)(A)(i)(I), "as an immigrant who, at the time of application for admission, was not in possession of a valid, unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Act, and a valid, unexpired passport, or other suitable travel document, or document of identity and nationality as required under the regulations issued by the Attorney General under section 211(a) of the Act." Dkt. No. 19 at 3.

[2] The Form I-213 submitted as an exhibit to Assistant U.S. Attorney Michelle R. Lambert's Declaration claims that ICE agents placed Petitioner under arrest "without incident." Dkt. No. 20-4 at 5. Because the Lambert Declaration is not sworn under penalty of perjury as required under 28 U.S.C. § 1746, the Court does not consider it or the associated exhibits. In any event, the details of Petitioner's arrest are inconsequential to the Court's ruling.

On September 19, 2026, ICE transferred Petitioner from the NWIPC to the Golden State Annex in McFarland, California. *Id.* On September 21, 2026, Respondents[3] filed a notice of prior transfer, claiming that the "Court lacks jurisdiction over the habeas petition as Petitioner was not in the District when the Petition was filed." Dkt. No. 6 at 2. The next day, the Court ordered Petitioner to show cause why this case should not be transferred to the Eastern District of California, Fresno Division. Dkt. No. 9. On September 24, 2026, Petitioner responded to the show cause order. Dkt. No. 10. On October 2, 2026, the Court declined to transfer the matter, concluding that the habeas petition had been filed prior to when Petitioner's custody transferred to the warden of the Golden State Annex facility, so the Court had jurisdiction over the petition. Dkt. No. 14. The Court also stayed the case until Petitioner verified his petition. *Id.* at 4.

On October 7, 2026, Petitioner filed a verified amended petition, Dkt. No. 15, and the Court lifted the stay on the briefing schedule, Dkt. No. 16. On October 21, Respondents filed a return. Dkt. No. 18. The same day, Petitioner filed a "Motion to Stay," Dkt. No. 17, which the Court denied because the motion was an improperly filed motion for a temporary restraining order, its scheduling order already prevented transfer without advance notice, and it did not have power to order the other requested relief in the motion, Dkt. No. 21. On October 29, Petitioner filed a traverse. Dkt. No. 22.

## II. DISCUSSION

Petitioner claims that his re-detention violated his right to due process because the Government failed to "provide any written notice explaining the basis for the revocation of his

[3] Although Bruce Scott, the warden of the NWIPC, has not appeared in this case, (1) the purpose of naming the petitioner's custodian is to effectuate injunctive relief where appropriate, *see Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (the custodian has "the power to produce the body of [the petitioner] before the court or judge," such that "he may be liberated if no sufficient reason is shown to the contrary" (citation modified)); and (2) federal respondents often represent the warden's interests, as they do in this case, *see Doe v. Garland*, 109 F.4th 1188, 1196 (9th Cir. 2024) ("Even in cases where private contract wardens are named as respondents, the government can and has stepped in to defend its interest in keeping petitioners detained.").

release," and cannot "strip him of his liberty without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 15 at 2, 10. He requests immediate release, a permanent injunction during the pendency of his removal proceedings preventing his re-detention "absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that the Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks," and attorney's fees and costs. *Id.* at 11. Respondents concede that Petitioner is detained pursuant to 8 U.S.C. § 1226(a), but contend that his re-detention did not violate due process because his prior release on an OREC was "extinguished" when the IJ dismissed his first removal proceedings in 2023. Dkt. No. 18 at 2. They assert that the process available under Section 1226(a)—namely, a bond hearing—is sufficient to satisfy due process requirements. *Id.* at 9.

**A. Legal Standard**

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2). "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). "Once a [constitutional] right and a violation have been shown, the scope of a district court's equitable powers to remedy past wrongs is broad, for breadth and

flexibility are inherent in equitable remedies." *Roman v. Wolf*, 977 F.3d 935, 942 (9th Cir. 2020) (quoting *Swann v. Charlotte-Mecklenburg Bd. of Educ.*, 402 U.S. 1, 15 (1971)).

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law[.]" U.S. Const. amend. V. "The Fifth Amendment guarantees due process in deportation proceedings." *Torres-Aguilar v. I.N.S.*, 246 F.3d 1267, 1270 (9th Cir. 2001). "[T]he Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas*, 533 U.S. at 693; *see also Demore v. Kim*, 538 U.S. 510, 523 (2003) (recognizing that Fifth Amendment due process protections extend to deportation proceedings, but noting that "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process").

**B. Petitioner Has Established a Due Process Violation**

The parties do not dispute that Petitioner is detained pursuant to 8 U.S.C. § 1226(a). Dkt. No. 18 at 1; Dkt. No. 22 at 2. The applicable statute matters because the constitutional process required is not necessarily the same for "different statutory provision[s] with [their] own procedural safeguards in place." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022). Accordingly, the Court first addresses the applicable statutory process and then addresses due process.

1. <u>Process Required by the Statute and Implementing Regulations</u>

Section 1226 authorizes the government to detain a noncitizen "pending a decision on whether the [noncitizen] is to be removed from the United States." 8 U.S.C. § 1226(a); *see also Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) ("Section 1226 generally governs the process of arresting and detaining . . . [noncitizens] pending their removal."). As the Supreme Court instructed in *Jennings*, "[s]ection 1226(a) sets out the default rule: The Attorney General may issue a warrant

for the arrest and detention of a[] [noncitizen]" pending a removal decision, and "'may release' a[] [noncitizen] detained under § 1226(a) 'on bond . . . or conditional parole.'" 583 U.S. at 288 (ellipses in original) (quoting 8 U.S.C. § 1226(a)).

"Federal regulations provide that [noncitizens] detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). In the first instance, the arresting officer makes the initial determination whether to release a noncitizen detained under § 1226(a) on bond or parole. 8 C.F.R. § 236.1(c)(8). Following this initial custody determination, the noncitizen may request a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 236.1(d)(1), 1003.19.

Under DHS regulations, a noncitizen detained under Section 1226(a) bears the burden of showing, by a preponderance of the evidence, that he does not pose a danger to the community and is not a flight risk. 8 C.F.R. § 1236.1(c)(8); *see also Rodriguez Diaz*, 53 F.4th at 1197; *Matter of Guerra*, 24 I&N Dec. 37, 40 (B.I.A. 2006); *Matter of Barreiros*, 10 I&N Dec. 536, 537 (B.I.A. 1964). In assessing whether to release a noncitizen on bond, the immigration judge considers, among other factors, "the individual's ties to the United States as well as his employment history, criminal record, history of immigration violations, and manner of entry into this country." *Rodriguez Diaz*, 53 F.4th at 1197 (citing *Guerra*, 24 I&N Dec. at 40); *see also Matter of E-Y-F-G*, 29 I&N Dec. 103, 104 (B.I.A. 2025). The detainee may be represented by counsel and can submit evidence in support of his claims. *See* 8 C.F.R. § 1003.19(b); *Matter of Fatahi*, 26 I. & N. Dec. 791, 792 (B.I.A. 2016). He can also appeal an adverse decision to the BIA. 8 C.F.R. § 236.1(d)(3). The detainee may also request an additional bond hearing based on a material change in circumstances. 8 C.F.R. § 1003.19(e).

If bond is granted, the noncitizen's bond can be revoked at any time, even if the noncitizen was previously released; however, if an immigration judge has determined that the noncitizen

should be released, DHS may not re-arrest that noncitizen absent a change in circumstance. *Saravia for A.H. v. Sessions*, 905 F.3d 1137, 1145 n.10 (9th Cir. 2018) (citing *Matter of Sugay*, 17 I. & N. Dec. 637, 640 (B.I.A. 1981)). "DHS has incorporated this holding into its practice, requiring a showing of changed circumstances both where the prior bond determination was made by an immigration judge and where the previous release decision was made by a DHS officer." *Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1197 (N.D. Cal. 2017); *see also Y.M.M. v. Wamsley*, No. 2:25-cv-02075, Dkt. No. 10 at 2 (W.D. Wash. Nov. 4, 2025) (Respondents' brief stating that it has "long been recognized by the Board of Immigration Appeals [that] a senior immigration official's exercise of discretion to revoke an individual's release under 8 C.F.R. § 236.1(c)(9) is limited to situations in which there has been a 'change in circumstance' since the non-citizen was initially released."). Only specific officials may revoke a noncitizen's OREC under 8 C.F.R. § 236.1(c)(9).

2. Due Process Requirements

As discussed above, Petitioner contends that his Fifth Amendment due process rights were violated by his re-detention without "any written notice explaining the basis for the revocation of his release" and "without written notice and a pre-deprivation hearing before a neutral decisionmaker to determine whether re-detention is warranted based on danger or flight risk." Dkt. No. 15 at 2, 10. Respondents concede that Petitioner's detention is governed by 8 U.S.C. § 1226(a) and that he may "ask an immigration judge for a redetermination of the custody decision." Dkt. No. 18 at 5. They also concede that Petitioner's initial custody determination form "indicated that Petitioner wanted an immigration court to review his custody" and that, "[a]dmittedly, ICE belatedly filed this notice with the immigration court." *Id.* Nevertheless, they contend that Petitioner's arrest "was not a re-detention necessitating a pre-deprivation hearing"; instead, his arrest "should be treated as an initial arrest" because the 2023 dismissal of his removal proceedings

"extinguished" his 2019 release on an OREC. *Id.* 2, 6–7. Accordingly, they contend that the appropriate remedy, if any, "would be to order a bond redetermination hearing." *Id.* at 6.

"Procedural due process imposes constraints on governmental decisions which deprive individuals of 'liberty' or 'property' interests within the meaning of the Due Process Clause of the Fifth or Fourteenth Amendment." *Mathews v. Eldridge*, 424 U.S. 319, 332 (1976). "The fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Id.* at 333 (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)). In analyzing a procedural due process claim, the court engages in a two-step analysis: First, the court determines whether the detainee "was deprived of a constitutionally protected liberty or property interest." *Johnson v. Ryan*, 55 F.4th 1167, 1179 (9th Cir. 2022). Second, the court examines "whether that deprivation was accompanied by sufficient procedural protections" using the test enunciated in *Mathews v. Eldridge*. *Id.* at 1179–80.

*(a) Constitutionally Protected Liberty Interest*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty th[e] [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. Noncitizens "who have once passed through our gates, even illegally," are entitled to "proceedings conforming to traditional standards of fairness encompassed in due process of law." *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)); *see also Zadvydas*, 533 U.S. at 693. Although merely "set[ting] foot on U.S. soil" may not be sufficient to "effect[] an entry" and trigger due-process protections for admissions decisions if a noncitizen is detained shortly thereafter, *Dep't of Homeland Sec. v. Thuraissigiam*, 591 U.S. 103, 139–40 (2020), if a noncitizen "gain[s a] foothold in the United States," *Kaplan v. Tod*, 267 U.S. 228, 230 (1925), or "begins to develop . . . ties" in this country, "his constitutional status changes accordingly," and he "has a right to due process," *Landon v. Plasencia*, 459 U.S. 21, 32–33 (1982); *see also*

*Yamataya v. Fisher*, 189 U.S. 86, 100–01 (1903) (distinguishing noncitizens entitled to due process from those "who ha[ve] been here for too brief a period to have become, in any real sense, a part of our population"). Put another way, "[noncitizens] who have established connections in this country have due process rights in deportation proceedings[.]" *Thuraissigiam*, 591 U.S. at 107.

Petitioner has been living in the United States since May 2019 when he arrived as a minor. Dkt. No. 15 at 2. He has no criminal record and complied with the terms of his OREC issued in 2019, including attending immigration court hearings in his since-dismissed removal proceedings. Assuming without deciding that Respondents are correct that his arrest "should be treated as an initial arrest," Dkt. No. 18 at 7, he is still due certain process. Section 236(a) of the INA provides that "[*o*]*n a warrant issued by the Attorney General*, [a noncitizen] may be arrested and detained pending a decision on whether [he] is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Under Section 287(a)(2) of the INA, immigration agents may conduct a warrantless arrest if they have "reason to believe" that the noncitizen (1) "is in the United States in violation of [immigration laws]" and (2) "is likely to escape before a warrant can be obtained for his arrest, but the [noncitizen] arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States[.]" 8 U.S.C. § 1357(a)(2). Here, there is no admissible evidence[4] that Petitioner's arrest occurred pursuant to a warrant, nor is there admissible evidence that immigration agents believed he was likely to escape before a warrant could be obtained. Petitioner is entitled to at least these protections with respect to his protected liberty interest in remaining out of immigration custody. Indeed, Respondents do not dispute that "Petitioner has a liberty interest[.]" Dkt. No. 18 at 8.

---

[4] *See supra* n.2.

*(b) Procedural Protections*

To determine what procedures are constitutionally sufficient to protect a petitioner's liberty interest, courts analyze the three *Mathews* factors:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 335. In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that *Mathews'* three-part test applies in "the immigration detention context," 53 F.4th at 1206–07, and district courts have applied the *Mathews* test in that context, *see, e.g.*, *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1033 (N.D. Cal. 2025).

With respect to the first factor, as discussed above, Petitioner has an interest in remaining out of immigration detention. *See Morrissey v. Brewer*, 408 U.S. 471, 482 (1972). Despite his liberty interest being "indeterminate," that interest "includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the [noncitizen] and often on others." *Id.* The Court rejects Respondents' implied suggestion that because Petitioner's previous immigration case had been dismissed and his release on an OREC was "extinguished," Dkt. No. 18 at 2, his liberty interest is lesser than a noncitizen who is still actively in immigration proceedings and under an order of supervision. *See Orozco Cortez v. Hernandez*, No. 2:26-CV-03708-JHC, 2026 WL 3168034, at *2 (W.D. Wash. Oct. 22, 2026) (rejecting the argument that petitioner was not entitled to pre-deprivation process when his bond was cancelled and his immigration case was administratively closed); *Lima Gamez v. Hernandez*, No. 2:26-cv-01104-BAT, 2026 WL 1382362, at *5 (W.D. Wash. May 18, 2026) ("The Court finds little sense in the proposition that, merely because the government dismissed removal proceedings against Petitioner

and released him with no restrictions, he is less entitled to procedural protections than would be a petitioner who remains in active removal proceedings and is subject to conditional release."); *Yu v. Hernandez*, No. 2:26-CV-01372-DGE, 2026 WL 1560581, at *8 (W.D. Wash. May 22, 2026) ("A noncitizen's due process protections after dismissal of prior removal proceedings cannot be less than the due process protections afforded to noncitizens subject to conditional release."). Relatedly, Petitioner has an interest in the government adhering to its own procedures regarding arrests and bond hearings. *Jennings*, 583 U.S. at 306 (citing 8 C.F.R. §§ 236.1(d)(1), 1236.1(d)(1)). This factor favors Petitioner.

Turning to the second factor, Respondents admit that Petitioner's custody determination form "indicated that Petitioner wanted an immigration court to review his custody" and that "ICE belatedly filed this notice with the immigration court." Dkt. No. 18 at 5. They claim that "Petitioner retains the ability to" request a bond hearing, *id.* at 5–6, but this claim rings hollow when, by Respondents' own admission, Petitioner already requested a bond hearing, and has not been provided one. The mere recognition by Respondents that Petitioner is owed process does not mean that Petitioner has received that process. The risk of erroneous deprivation is significant where the government fails to follow its own procedures, thus depriving the noncitizen of process due. *See Lopez v. Noem*, No. CV-GLR-25-3662, 2025 WL 3496195, at *5 (D. Md. Dec. 5, 2025) (finding that there was a high risk of erroneous deprivation because "the Government's failure to comply with its own agency regulations necessarily deprive[d] [petitioner] of the procedural process due her, rendering her current detention unlawful"); *J.L.R.P. v. Wofford*, No. 1:25-CV-01464-KES-SKO (HC), 2025 WL 3190589, at *9 (E.D. Cal. Nov. 14, 2025) (finding that the risk of erroneous deprivation was high where ICE "did not provide petitioner the process required by its own regulations").

As Respondents seem to recognize, Dkt. No. 18 at 4–6, the procedures afforded under Section 1226(a) would substantially mitigate the risk of erroneous deprivation of Petitioner's liberty, because those procedures allow detention only where the petitioner presents a flight risk or danger to the community. An adverse decision by an immigration judge in a bond hearing can further be appealed, and Petitioner could seek additional custody redeterminations based on changed circumstances, such that the outcome of a bond hearing would be subject to "numerous levels of review, each offering [the petitioner] the opportunity to be heard by a neutral decisionmaker." *Rodriguez Diaz*, 53 F.4th at 1210 (finding the bond hearing procedures available through the implementing regulations of Section 1226(a) would render "the risk of erroneous deprivation . . . relatively small") (citation omitted). But Petitioner has been detained for nearly two months without receiving a bond hearing that Respondents concede he is due. This factor weighs in favor of Petitioner.

The third and final *Mathews* factor considers the "Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335. The Court acknowledges that enforcing immigration laws, including "securing [a noncitizen's] ultimate removal," are "interests of the highest order." *Rodriguez Diaz*, 53 F.4th at 1208. However, those interests are not impermissibly burdened by requiring the government to follow its own procedures regarding bond hearings. Therefore, the Court finds that this factor too weighs in favor of Petitioner.

Under *Mathews*, the Court finds that the United States failed to provide Petitioner with the procedures due to him under the Due Process Clause, and accordingly, his detention is unlawful.

**C. Remedy**

Because Petitioner has been denied the process that Respondents concede that he is owed under statute and regulation, and the record contains no adequate basis for Petitioner's continued

detention, the Court concludes that the "typical remedy" of release is appropriate. *See Munaf v. Geren*, 553 U.S. 674, 693 (2008) (finding that "[h]abeas is at its core a remedy for unlawful executive detention" and the "typical remedy for such detention is, of course, release."); *Preiser*, 411 U.S. at 484 ("[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody."); *Orozco Cortez*, 2026 WL 3168034, at *2 (ordering release of petitioner re-detained without due process years after his first removal proceedings were administratively closed).

**D. Injunctive Relief**

As described, Petitioner requests a permanent injunction preventing Respondents from re-detaining him "during the pendency of his removal proceeding absent written notice and a hearing prior to re-detention where Respondents must prove by clear and convincing evidence that the Petitioner is a flight risk or danger to the community and that no alternatives to detention would mitigate those risks[.]" Dkt. No. 15 at 11. Respondents argue that injunctive relief is not warranted because "Petitioner has not alleged any basis on which his hypothetical future re-detention would be unlawful nor shown that due process would require a pre-deprivation hearing under *any set of facts* while his removal proceedings are ongoing." Dkt. No. 18 at 9. In his traverse, Petitioner alleges that Respondents have engaged in unfair tactics throughout his new removal proceedings, which satisfies the requirements for a permanent injunction. Dkt. No. 22 at 6–8.

Where, as here, habeas petitioners raise Due Process claims and have also invoked the Court's jurisdiction under 28 U.S.C. § 1331, the Court has "the authority both to entertain [the petitioner's] constitutional challenges and to grant injunctive relief in response to them," "irrespective of the accompanying habeas petition." *Roman*, 977 F.3d at 941-42. Importantly, though, "[i]n seeking a permanent injunction, the moving party must convince the court that relief is needed: 'The necessary determination is that there exists some cognizable danger of recurrent

violation, something more than the mere possibility which serves to keep the case alive.'" *Cummings v. Connell*, 316 F.3d 886, 897 (9th Cir. 2003) (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953)). Nowhere does Petitioner allege that re-detention is likely if he were to be released or that such detention is likely to occur without compliance with the government's regulations or policies. His claims regarding the Respondent's alleged procedural improprieties in his removal proceedings, Dkt. No. 22 at 6–8, are simply beside the point because they do not pertain to the likelihood of his future re-detention. For these reasons, the Court denies his request for injunctive relief regarding potential future re-detention.

## III. CONCLUSION

For the foregoing reasons, Petitioner's amended petition for a writ of habeas corpus, Dkt. No. 15, is GRANTED IN PART and DENIED IN PART, and the Court ORDERS as follows:

1. Respondents shall release Petitioner from custody within 24 hours on the terms of his most recent OREC or other terms consistent with Section 1226(a) and shall return to Petitioner any personal property not required to be retained by Respondents by law;
2. Respondents shall facilitate Petitioner's prompt return to Lynden, Washington;
3. The parties shall file a Joint Status Report by November 4, 2026, confirming that Petitioner has been released and arrangements have been made for his return to Lynden, Washington;
4. Any fee petition should be filed within the deadlines set by the Equal Access to Justice Act, 28 U.S.C. § 2412. *See Michelin v. Warden Moshannon Valley Corr.* Ctr., No. 24-2990, 2026 WL 263483, at *10 (3d Cir. Feb. 2, 2026) (the Equal Access to Justice Act authorizes the award of attorney's fees to petitioners who prevail against the Government in immigration habeas actions); *Daley v. Ceja*, 158

F.4th 1152, 1162 (10th Cir. 2025) (same); *Vacchio v. Ashcroft*, 404 F.3d 663, 668 (2d Cir. 2005) (same); *Nadarajah v. Holder*, 569 F.3d 906 (9th Cir. 2009) (granting fee award to immigration detainee who prevailed on habeas petition); *Petition of Hill*, 775 F.2d 1037, 1041 (9th Cir. 1985) (reasoning that an award of fees under EAJA was not necessarily foreclosed for a habeas petition brought by "a nonresident [noncitizen]" in the immigration context); *but see Barco v. Witte*, 65 F.4th 782, 785 (5th Cir. 2023) (holding that EAJA does not authorize attorney's fees for successful 28 U.S.C. § 2241 motions); *Obando-Segura v. Garland*, 999 F.3d 190, 197 (4th Cir. 2021) (same). Time spent on work that is "excessive, redundant, or otherwise unnecessary" is not compensable. *Gates v. Deukmejian*, 987 F.2d 1392, 1397 (9th Cir. 1992) (citation modified). For example, attorneys may not seek compensation for time spent developing a habeas petition template when such template was merely re-used in the instant proceeding; only the time spent dedicated to this proceeding is compensable. *See Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *10 (W.D. Wash. Jan. 31, 2022).

Dated this 2nd day of November, 2026.



Lauren King
United States District Judge